**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL J. SCHAEFER, | ) |
| Plaintiff, | ) |
| | ) No. 4:12-CV-311 CAS |
| v. | ) |
| FIRST SOURCE ADVANTAGE, LLC, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' competing motions for summary judgment. The motions are fully briefed and ready for decision. For the following reasons, the Court will grant defendant First Source Advantage, LLC's ("FSA") motion for summary judgment based on judicial estoppel, and deny plaintiff Michael J. Schaefer's ("plaintiff") motion for summary judgment.

**Background**

Plaintiff brings this action alleging that defendant FSA, a debt collection firm, violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), while attempting to collect a consumer debt allegedly owed by plaintiff to a third party, Capital One Bank. Plaintiff alleges that FSA violated the FDCPA by overshadowing his dispute and verification rights and failing to identify itself as a debt collector, and violated the TCPA by contacting him repeatedly on his cellular telephone without his consent, using an automatic telephone dialing system. Plaintiff seeks statutory damages, costs and attorneys' fees under the FDCPA and TPCA, and actual damages for cellular telephone charges, anxiety, sleeplessness and worry.

**Legal Standard**

The Eighth Circuit recently clarified the appropriate standard for consideration of motions for summary judgment, explaining as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted). The Eighth Circuit has also recently explained what the nonmoving party must do to meet its obligation to show that disputed facts are material:

> In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying "facts that might affect the outcome of the suit." Anderson [v. Liberty Lobby, Inc.], 477 U.S. [242] at 248 [(1986)]. The nonmoving party must then categorize the factual disputes in relation to the legal elements of her claim. Id.; Rodgers v. City of Des Moines, 435 F.3d 904, 908 (8th Cir. 2006).

Quinn v. St. Louis County, 653 F.3d 745, 751-52 (8th Cir. 2011). To survive a motion for summary judgment, the nonmoving party must "explain the legal significance of her factual allegations beyond mere conclusory statements importing the appropriate terms of art" and provide a "meaningful legal analysis explaining how, under the applicable law, the disputed facts might prove [her] claim at trial." Id. at 752 (internal citations omitted).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law.  Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa June 15, 2007).  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir.1983).

**Facts**

    A.  Plaintiff's bankruptcy

On October 6, 2011, plaintiff and his wife filed a Chapter 7 voluntary bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Missouri.  See In re: Michael Schaefer and Shelly Schaefer, Case No. 11-50681 (Bankr. E.D. Mo.).[1]  Plaintiff was represented by counsel in his bankruptcy proceedings.  Plaintiff failed to list his FDCPA and TCPA claims against FSA as an asset in his bankruptcy Schedule B or otherwise indicate to that court or the trustee that the claims existed.  Schedule B – Personal Property, Question 21, required plaintiff to list "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each."  (Doc. 1, Case No. 11-50681).  Plaintiff checked "none."

On December 21, 2011, plaintiff filed suit against FSA in the Circuit Court of St. Charles County, Missouri, alleging violations of the FDCPA and TCPA based on FSA's conduct beginning

---

[1]The Court takes judicial notice of the records in plaintiff's bankruptcy case.  Federal courts "may take judicial notice of proceedings in other courts that relate directly to matters at issue."  Great Plains Trust Co. v. Union Pacific R.R. Co., 492 F.3d 986, 996 (8th Cir. 2007).

in June 2011. FSA removed the case to this Court on February 20, 2012. Plaintiff did not amend the schedules in his bankruptcy case to include his lawsuit against FSA as an asset. On January 18, 2012, the bankruptcy court issued an order granting plaintiff and his wife a discharge of their debts in bankruptcy under section 727 of title II, United States Code. (Doc. 18, Case No. 50681). On February 27, 2012, the bankruptcy trustee filed a Chapter 7 Trustee's Report of No Distribution, indicating that there existed no assets in plaintiff's bankruptcy case to administer on behalf of plaintiff's creditors. On the same day, a Final Decree was entered and the bankruptcy case was closed. (Doc. 21, Case No. 50681).

On July 6, 2012, plaintiff filed a motion for partial summary judgment in this case on the FDCPA claims. On August 7, 2012, FSA filed its motion for summary judgment, arguing in part that plaintiff lacks standing or is judicially estopped from pursuing his claims against FSA because he did not list the claims in his bankruptcy schedules. The next day, plaintiff requested and was granted an extension of time to respond to FSA's motion for summary judgment.

On August 27, 2012, plaintiff filed a motion to reopen his bankruptcy case to amend Schedule B to include the previously undisclosed lawsuit against FSA. The motion to reopen was granted by the bankruptcy court and on September 11, 2012, plaintiff filed an amended schedule B. Under Question 21, for contingent and unliquidated claims, plaintiff stated, "Claim against Firstsource Advantage, LLC for violations of the FDCPA and TCPA currently filed as Schaefer v. Firstsource Advantage, LLC 4:12-cv-00311 CAS." (Doc. 26, Case No. 11-50681). Plaintiff stated that the current value of his interest in the FDCPA and TCPA claims was $1,000. (Id.)

Plaintiff also filed a Motion for Abandonment of Assets by Consent in the bankruptcy case on September 11, 2012, which states in pertinent part, "The Asset added to schedule B has little or no current value and may in fact never result in a payment, in that, Mr. Schaefer could lose the

litigation and not recover the estimated $1,000 in statutory damages, and therefore, the Assets are of inconsequential value and no benefit to the Estate." (Doc. 27, Case No. 11-50681). The Motion for Abandonment stated that the bankruptcy trustee consented to abandonment of the claim. (Id.) On September 13, 2012, the bankruptcy court granted the consent motion to abandon plaintiff's interest in the instant action. (Doc. 29, Case No. 11-50681).

      2. The Rule 68 Offer of Judgment

On March 14, 2012, FSA made a Rule 68 Offer of Judgment to plaintiff, offering to allow judgment to be entered in plaintiff's favor on the following terms: monetary judgment in the amount of $1,001, plus reasonable attorneys' fees and costs, as determined by the Court. As part of the transmittal letter, FSA explained to plaintiff that it did not use an autodialer or leave prerecorded messages when calling plaintiff's cellular telephone number. On March 15, 2012, plaintiff's counsel rejected FSA's Rule 68 offer, and presented a counteroffer of settlement, but the parties did not settle.

**Discussion**

FSA moves for summary judgment on five grounds: (1) plaintiff lacks standing to prosecute this action; (2) the principle of judicial estoppel bars plaintiff from proceeding in this action because he did not disclose his claims against FSA in the bankruptcy proceeding; (3) plaintiff's TCPA claim fails because FSA did not use an automated dialing system or leave prerecorded messages when it called plaintiff's cellular telephone; (4) plaintiff's FDCPA claim is moot because FSA has tendered a Rule 68 Offer of Judgment offering plaintiff 100% of the statutory damages available and there is no basis to believe plaintiff could have incurred any actual damages; and (5) FSA is entitled to summary judgment on the merits of plaintiff's FDCPA claims.

A.  Standing

FSA argues in its motion for summary judgment that plaintiff lacks standing to bring this suit, because the claims accrued prior to his filing for Chapter 7 bankruptcy protection, and he was in bankruptcy proceeding when this suit was filed but failed to disclose the existence of the claims to the bankruptcy court.  It is not clear whether FSA in its reply memorandum concedes that plaintiff now has standing to pursue this action.

Even if FSA concedes standing at this juncture, the Court will address the issue because "standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007).  In making a determination as to standing, "the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor." Young Am. Corp. v. Affiliated Computer Servs. (ACS), Inc., 424 F.3d 840, 843 (8th Cir. 2005).

As a threshold matter, FSA did not specify what type of standing it contends plaintiff lacks. "Though all are termed 'standing,' the differences between statutory, constitutional, and prudential standing are important.  Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 934 (8th Cir. 2012) (quoted case omitted). Constitutional, or Article III, standing "requires (1) an injury that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) that the injury 'be fairly traceable to the challenged action of the defendant,' and (3) that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" Turkish Coalition of America, Inc. v. Bruininks, 678 F.3d 617, 621 (8th Cir. 2012) (quoted case omitted).  Plaintiff had Article III standing at the time he filed this action because he alleges an injury fairly traceable to FSA's

allegedly illegal conduct, i.e., violations of the FDCPA and TCPA, which are redressable by the requested relief.

An additional inquiry is whether plaintiff had prudential standing. "Prudential principles of standing are statutorily imposed jurisdictional limitations separate from and in addition to constitutional standing requirements." Davis v. U.S. Bancorp, 383 F.3d 761, 767 (8th Cir. 2004). A plaintiff may have Article III standing but lack prudential standing for several reasons. Oti Kaga, Inc. v. South Dakota Hous. Dev. Auth., 342 F.3d 871, 880 (8th Cir. 2003) (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)). One rule of prudential standing is that a "plaintiff may . . . run afoul of prudential standing limits because the claim rests on the legal rights of third-parties[.]" Id. A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Warth, 422 U.S. at 499.

In this case, plaintiff lacked prudential standing at the time suit was filed. Under federal bankruptcy law, "all legal or equitable interests of the debtor in property as of the commencement of the case" become part of the bankruptcy "estate." 11 U.S.C. § 541(a)(1); In re Ozark Rest. Equip. Co., Inc. (Mixon v. Anderson), 816 F.2d 1222, 1224-25 (8th Cir. 1987). The debtor must list all legal or equitable interests in property on a schedule of assets and liabilities. 11 U.S.C. § 521(a)(1)(B)(I). "Causes of action are interests in property and are therefore included in the [bankruptcy] estate[.]" In re Senior Cottages of America, LLC (Moratzka v. Morris), 482 F.3d 997, 1001 (8th Cir. 2007). This includes "all causes of action that the debtor could have brought at the time of the bankruptcy petition." United States ex rel. Gebert v. Transport Admin. Servs., 260 F.3d 909, 913 (8th Cir. 2001). "[A]fter appointment of a trustee, a Chapter 7 debtor no longer has standing to pursue a cause of action which existed at the time the Chapter 7 petition was filed. Only the trustee, as representative of the estate, has the authority to prosecute and/or settle such causes

7

of action." <u>Harris v. St. Louis Univ.</u>, 114 B. R. 647, 648 (E.D. Mo. 1990) (quoted case omitted); <u>see</u> also <u>In re Senior Cottages of America, LLC</u>, 482 F.3d at 1001 (bankruptcy trustee has standing to assert causes of action that belonged to the debtor at the time of filing bankruptcy).

FSA's conduct that gave rise to this action occurred before plaintiff filed for bankruptcy protection in October 2011. Plaintiff filed this action in state court in December 2011. Plaintiff lacked prudential standing when he filed suit because, at that time, the FDCPA and TCPA claims were property of the bankruptcy estate. The trustee of plaintiff's bankruptcy estate was the real party in interest and had exclusive standing to assert the FDCPA and TCPA claims against FSA. <u>See</u> <u>Martin v. U.S. Bank</u>, 2005 WL 3107722, at *5 (E.D. Mo. Nov. 18, 2005).

If a debtor fails to list an asset in his bankruptcy schedules, that asset is not automatically abandoned back to the debtor when the case is closed but instead remains part of the estate. 11 U.S.C. § 554(c),(d). Here, plaintiff reopened his bankruptcy case, amended his schedules to list the FDCPA and TCPA claims against FSA, and obtained the trustee's formal abandonment of the claims. "The Bankruptcy Code allows a trustee to abandon any property of the estate that 'is burdensome to the estate or that is of inconsequential value or benefit to the estate.' 11 U.S.C. § 554(a). Title to abandoned property reverts to the debtor as it was held previous to the filing of bankruptcy." <u>In re Bentley</u>, 916 F.2d 431, 432 (8th Cir. 1990) (cited case omitted). Where the bankruptcy trustee formally abandons property, as occurred with the FDCPA and TCPA claims here, the debtor regains his interest in the property. As a result, plaintiff became the real party in interest and has prudential standing to pursue this action. FSA's motion for summary judgment based on lack of standing should therefore be denied.

B. Judicial Estoppel

FSA also moves for summary judgment on judicial estoppel grounds. FSA argues that plaintiff is judicially estopped from bringing this action based on his failure to include the FDCPA and TCPA claims in his sworn bankruptcy schedules, until this fact was disclosed by FSA in its motion for summary judgment.

Judicial estoppel is an equitable doctrine that "prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding[.]" New Hampshire v. Maine, 532 U.S. 742, 749 (2001). The purpose of judicial estoppel is to protect the integrity of the judicial process by preventing parties from playing "fast and loose with the courts to suit the exigencies of self interest." In re Coastal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999). "A court invokes judicial estoppel when a party abuses the judicial forum or process by making a knowing misrepresentation to the court or perpetrating a fraud on the court." Stallings v. Hussmann Corp., 447 F.3d 1041, 1047 (8th Cir. 2006).

This Court has rejected the argument that a debtor who omits a claim can negate a judicial estoppel defense by reopening the bankruptcy case and amending the schedules. Copeland v. Hussmann Corp., 462 F.Supp.2d 1012, 1020 (E.D. Mo. 2006). The Court will therefore not treat plaintiff's amended schedules and the trustee's abandonment of the claims as negating FSA's judicial estoppel argument.

The Supreme Court has outlined three factors to consider when applying the doctrine: (1) whether the party's later position was "clearly inconsistent" with the party's earlier position; (2) whether the party "has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an

9

inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." New Hampshire, 532 U.S. at 750-51. The Supreme Court noted that these three factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." Id. at 751.

The doctrine of judicial estoppel has frequently been applied in the context of bankruptcy. When a party has filed for bankruptcy, he or she "may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." Stallings, 447 F.3d at 1047 (citing Coastal Plains, 179 F.3d at 208). "A debtor's failure to list a claim in the 'mandatory bankruptcy filings is tantamount to a representation that no such claim existed.'" Id. (quoting In re Superior Crewboats, Inc., 374 F.3d 330, 335 (5th Cir. 2004)). The Eighth Circuit has, however, rejected a rule that would allow a debtor's non-disclosure in bankruptcy by itself to provide the basis for the application of judicial estoppel. The Court stated that such an approach "would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies." Id. at 1049. Instead, in cases such as these, district courts are to apply the three factors discussed in New Hampshire. Id. at 1047. Also, for estoppel to apply, there must be a requisite intent to deceive or manipulate the courts. Id. at 1049 ("[c]areless or inadvertent disclosures are not the equivalent of deliberate manipulation). The Eighth Circuit noted that judicial estoppel "is an extraordinary remedy" and should only be applied "when a party's inconsistent behavior will result in a miscarriage of justice." Id.

Here, the first New Hampshire factor is satisfied. Plaintiff failed to list his claim against FSA in his Chapter 7 proceedings even though its conduct occurred prior to the bankruptcy filing. More importantly, plaintiff failed to update his bankruptcy schedules after he filed suit against FSA during the pendency of the bankruptcy proceedings. Even assuming that plaintiff may not have

realized at the time of his bankruptcy filing that FSA's conduct could be a violation of the FDCPA or TCPA, and there is no evidence on this point, the claims existed at that point and plaintiff certainly realized that he had claims against FSA when he filed this suit. At the latest, plaintiff should have disclosed the claims in his bankruptcy schedules when this action was filed. Plaintiff's current assertion that he has claims for actual and statutory damages against FSA based on violations of the FDCPA and TCPA is inconsistent with his failure to disclose the claims to the bankruptcy court, which in essence "represented to the bankruptcy court that no such claims existed." Stallings, 447 F.3d at 1049.

The second New Hampshire factor is also met in this case. There was judicial acceptance of plaintiff's inconsistent position because the bankruptcy court relied on plaintiff's schedules and effectively adopted his position in issuing plaintiff a "no asset" discharge from his debts under Chapter 7 of the Bankruptcy Code and closing the bankruptcy case. See Stallings, 447 F.3d at 1047. This is true even if the bankruptcy is later reopened. Id.; see also Canterbury v. Federal-Mogul Ignition Co., 483 F.Supp.2d 820, 828 (S.D. Iowa 2007) (citing Stallings).

The final New Hampshire factor requires the Court to determine whether plaintiff would derive an unfair advantage or impose an unfair detriment on FSA if not estopped. The Court finds that the third factor is met here, as plaintiff would derive an unfair advantage and benefit from his failure to list the FDCPA and TCPA claims in his bankruptcy. If plaintiff were to prevail on his claims against FSA in this Court after failing to disclose them in the bankruptcy proceeding, he "would be placed in the position to recover monetary damages for [himself] without having to pay creditors" because his debts have already been discharged. Tokheim v. Georgia-Pacific Gypsum L.L.C., 606 F.Supp.2d 988, 997 (N.D. Iowa 2009). Further, plaintiff would gain an unfair advantage because when he did amend his bankruptcy schedules to list the claims against FSA, he represented

11

to the bankruptcy court under oath that the FDCPA and TCPA claims were worth a total of $1,000 in an effort to induce the trustee to abandon the claims, but he argues in this case that FSA's earlier Rule 68 offer of judgment of $1,001 plus reasonable attorney's fees on the FDCPA claim alone was inadequate to moot his case because he has actual damages of $2000 on the FDCPA claim in addition to statutory damages of $1,000, plus actual and statutory damages on his TCPA claim.

"Under the final New Hampshire factor, the debtor's non-disclosure of the claim must not be inadvertent and must result in the debtor gaining an unfair advantage." Stallings, 447 F.3d at 1148. The Eighth Circuit has "stressed that, pursuant to this third factor, a district court should not judicially estop a debtor whose prior inconsistent position was attributable to 'a good-faith mistake rather than as part of a scheme to mislead the court.'" EEOC v. CRST Van Expedited, Inc., 679 F.3d 657, 680 (8th Cir. 2012) (quoting Stallings, 447 F.3d at 1148); see also New Hampshire, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." (quotations and citation omitted)).

In this case, plaintiff has not offered any affirmative evidence of good-faith error or inadvertence. This Court has found it significant when a party does not attempt to explain why he did not list a claim as property in his bankruptcy proceeding. See, e.g., Martin, 2005 WL 3107722, at *4 ("Significantly, in none of Plaintiff's pleadings before this Court following Defendant's motion for summary judgment has she attempted to explain why she did not list her claim against Defendant as property in the bankruptcy proceeding."). Here, some evidence tends to suggest a lack of good faith. Plaintiff clearly had knowledge of his undisclosed claims, as evidenced by his filing of this lawsuit during the pendency of his bankruptcy proceedings, and had a motive to conceal them from the bankruptcy court. See Stallings, 447 F.3d at 1048. Plaintiff's failure to disclose his potential

12

claims to the bankruptcy court impaired both the interests of his creditors and the bankruptcy court. Id. Plaintiff was represented by counsel in his bankruptcy case, as well as separate counsel in this case. Nonetheless, plaintiff did not amend his bankruptcy schedules after filing this action, and ultimately did so only after the existence of his bankruptcy proceeding was brought to the Court's attention by FSA's motion for summary judgment.

Finally, in seeking to have the claims abandoned, plaintiff represented to the bankruptcy court under oath that his FDCPA and TCPA claims were worth only $1,000 in total even though, months earlier, he rejected FSA's Rule 68 offer of judgment of $1,001 plus fees and costs to settle the claims. Plaintiff now avers to this Court that his actual damages are worth "no less than $2,000" in addition to $1,000 in statutory damages, costs and attorneys' fees. Affidavit of Michael Schaefer at 4, ¶ 16. Plaintiff also argues in opposing FSA's motion for summary judgment that his case is not mooted by FSA's Rule 68 offer of judgment of $1,001 plus fees and costs, because his FDCPA claims alone are worth $3,000 in statutory and actual damages, in addition to the actual and statutory damages on his TCPA claims. Plaintiff's taking of these contrary positions before the bankruptcy court and this Court as to the value of his claims is evidence of a scheme to mislead the courts and obtain an unfair advantage or windfall. Compare Barger v. City of Cartersville, 348 F.3d 1289, 1296-97 (11th Cir. 2003) (plaintiff was judicially estopped from asserting monetary damages on a discrimination claim where she represented to the bankruptcy trustee at the creditor's meeting that her suit did not have monetary value because she only sought reinstatement to her position, even though she later reopened the bankruptcy estate seeking to include her damages).

For these reasons, the Court finds that all three of the New Hampshire factors have been satisfied and plaintiff's nondisclosure of his FDCPA and TCPA claims was not inadvertent. As a result, the Court concludes that plaintiff is bound by his previous representations and is judicially

13

estopped from pursing his claims in this lawsuit. FSA's motion for summary judgment should therefore be granted.

**Conclusion**

For the foregoing reasons, the Court concludes that plaintiff has prudential standing to pursue this action, but that he is judicially estopped from pursuing the FDCPA and TCPA claims. Defendant FSA's motion for summary judgment on the basis of judicial estoppel should therefore be granted. This ruling being dispositive, the Court does not address FSA's additional grounds for summary judgment. Plaintiff's motion for summary judgment should be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant First Source Advantage, LLC's motion for summary judgment is **GRANTED**. [Doc. 22]

**IT IS FURTHER ORDERED** that plaintiff Michael Schaefer's motion for summary judgment is **DENIED**. [Doc. 14]

An appropriate judgment will accompany this Memorandum and Order.

                                                                                              **CHARLES A. SHAW**
                                                                                              **UNITED STATES DISTRICT JUDGE**

Dated this  12th  day of February, 2013.